IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IMMANUEL CAMPBELL, et al.,<br><br>          Plaintiffs,<br><br>   v.<br><br>CITY OF CHICAGO, et al.,<br><br>          Defendants. | Case No. 17cv4467<br><br>Hon. John Z. Lee |

### DEFENDANT THE CITY OF CHICAGO'S REPLY IN SUPPORT OF A MOTION TO STRIKE ALLEGATIONS FROM AMENDED COMPLAINT

#### INTRODUCTION

  The Federal Rules of Civil Procedure require that a pleading provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Nevertheless, Plaintiffs devote much of their First Amended Complaint ("FAC") to a litany of allegations regarding the history of the Chicago Police Department ("CPD"), spanning back to the 1960s. Because these allegations (which in large part are cherry-picked from the April 2016 Police Accountability Task Force Report and the January 13, 2017 U.S. Department of Justice's Findings Report) are redundant, immaterial, and do nothing to advance or support Plaintiffs' claims, the Court should strike the allegations identified in Exhibit A of the City's Motion to Strike.

#### ARGUMENT

**I.  It is Proper to Strike Allegations which the Court Deems Redundant or Immaterial.**

  While Plaintiffs assert that a motion to strike like the one filed by the City is a "drastic" measure (Pls.' Resp. at 3), a motion to strike is appropriate where it "may cause the objecting party prejudice." *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992)

(affirming district court's striking of paragraphs in a complaint). "Prejudice occurs when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Harman v. Gist*, No. 02 C 6112, 2003 WL 22053591, at *3 (N.D. Ill. Sept. 2, 2003) (granting motion to strike). The purpose of the City's motion is not to delay the case: here, "where a motion to strike removes unnecessary clutter from the case, it serves to expedite, not delay." *Id.* (internal quotations and citations omitted). Allegations in a complaint should be struck where an "unnecessarily long" complaint makes it "difficult for the defendant to file a responsive pleading," which is exactly the prejudice that the City faces in this case. *Id.*

## II.   Plaintiffs' Racially Charged Allegations Should be Stricken.

Well-founded facts, relevant to the lawsuit, should not be stricken from the pleadings. However, vague, unfairly prejudicial allegations, asserted without factual bases like the ones identified in the City's Motion to Strike are improper. For example, the City asks the Court to strike the allegation that "[t]he use of excessive force against people of color is a key mode of social control used by the CPD and has been for decades." (FAC ¶ 39.) In their Response, Plaintiffs fail to demonstrate how that allegation is well-founded—or even factual. It is one thing to assert that the CPD has engaged in discriminatory policing; it is quite another to assert—without any support—that the CPD has deployed brutality as a decades-long program of "social control." (*Id.*) Such unsubstantiated, hyperbolic allegations like the ones identified in the Motion to Strike should be stricken. In addition to their inflammatory nature, they are too vague to put the City on notice of the allegations and to permit the City to admit or deny such allegations. *See Lucas v. Chicago Transit Authority*, 367 F.3d 714, 726 (7th Cir. 2004) (affirming district court's motion to strike vague allegations of racial statements where the

2

allegations "did not contain the time, place of the actions, nor did the allegations specify who was present.").

The purpose of Plaintiffs' use of racially charged, inflammatory comments is simply to scandalize the conduct of the entire CPD, despite Plaintiffs' recognition that a small fraction of CPD officers are responsible for the lion's share of alleged excessive force complaints. Such immaterial and inflammatory allegations go well beyond the pleading requirements dictated by Fed. R. Civ. P. 8(a).

Furthermore, Plaintiffs' attempt to distinguish the striking of certain inflammatory, racially-charged allegations in *Bd. of Educ. of Thornton Township High School District 205* from the City's Motion to Strike here is unavailing. (Pls.' Resp. at 7.) In *Thornton*, the court struck all of the racially-charged language alleged as "impertinent" allegations where were "inappropriate hyperbole." *Bd. of Educ. Of Thornton Township High School District 205 v. Argo Comm. High School Dist. 217*, Case No. 06 C 2005, 2006 WL 1896068, at *2-*3 (N.D. Ill. July 10, 2006) (striking allegations which served "no purpose other than scandalizing defendants' conduct and converting litigation into theater."). *Thornton* is particularly instructive because the plaintiffs, like Plaintiffs here, alleged intentional racial discrimination on the part of a government entity. *Id.* at *1. The plaintiffs alleged that the school boards for sixteen different school districts conspired to form racially segregated athletic conferences. *Id.* While intent was a key question in the case, the Court nonetheless struck a long, insensitive, and inflammatory quote from a school board member of one of the defendant school districts. *Id.* at *3. The plaintiffs argued, like Plaintiffs here, that the remarks were relevant to their claims. The court found that recitation of the remarks went beyond the "short and plain" statement required under Rule 8, and "appear[ed] intended to cast a derogatory light on defendants and must therefore be

3

stricken." *Id.* Likewise, here, such racially-charged remarks are unnecessary to advance Plaintiffs' claims and go well beyond what is required in Rule 8. *See also, e.g.*, *Porter v. International Business Machines Corp.*, 21 F. Supp. 2d 829, 832 (N.D. Ill. 1998) (striking allegations regarding conduct outside the events that were the subject to the complaint and which contained an allegation about a racial slur as immaterial).

Plaintiffs argue that the vague, hearsay comments of unnamed officers they allege are "proof of discriminatory intent." (Pls.' Resp., Ex. A at 3.) But, neither the purported comments nor the intent of any unnamed officer are relevant to any of Plaintiffs' claims. Plaintiffs are not suing the unnamed officers who allegedly made such comments, and the intent of any individual (unidentified) officer has no bearing on the question of the City's *Monell* liability. For these reasons, the improper racial allegations identified in the City's Motion to Strike should be stricken.

### III. Plaintiffs' Lengthy Recitation of Chicago's History and Prior Lawsuits are Prejudicial, Immaterial, and Redundant.

Plaintiffs devote some 73 pages of the FAC to a wide-ranging, historical account of CPD's alleged policing practices and policies. This, Plaintiffs assert, is necessary to provide "context" to Plaintiffs' allegations and to prove their *Monell* liability claim against the City. (Pls.' Resp. at 5.)

The allegations contained in the FAC go well beyond providing the context necessary to adequately plead a claim under Fed. R. Civ. P. 8. The obligations under Rule 8 do not give Plaintiffs' license to recite 73 pages of largely irrelevant historical allegations, dating back to the 1968 Democratic National Convention, and involving over a dozen old, unrelated lawsuits. Such allegations are immaterial and inflammatory, and should be stricken accordingly. *See Porter v. Pipefitters Ass'n Local Union 597, U.A.*, No. 12-cv-9844, 2013 WL 5162206, at *5 (N.D. Ill.

4

Sept. 12, 2013) (granting motion to strike over 70 allegations in complaint where the plaintiffs' "lengthy recounting of racial discrimination going back over a century is irrelevant to their claims as well as impertinent and inflammatory.").

In responding to the Motion to Strike, Plaintiffs offer no explanation why they *must* recite—or the City should be required to answer—details of past and pending lawsuits in order to advance their claims. Plaintiffs generally assert that their historical litany of allegations against the Chicago Police Department is necessary to support their claim for equitable relief. (Pls.' Resp. at 10.) But, Plaintiffs present allegations put forth in dozens of other complaints as undisputed facts (*see, e.g.*, FAC pp 29-39, summarizing allegations from 18 unrelated, pending matters), which would require the City to conduct a factual investigation into dozens of unrelated cases in order to simply meet the pleading requirements in this matter. Plaintiffs draw no connection between such minutiae and any of their asserted claims or requested relief.

The City's concern here is not with additional discovery, as Plaintiffs argue. (Resp. at 10.) Rather, the concern is that, if these extraneous factual allegations were to remain, the City would effectively be obligated to re-litigate the details of past and pending lawsuits, run down department decisions and investigations from the 1980s, respond to a congressional report from 1972, and evaluate officer feelings from 1968 simply to file an Answer to the First Amended Complaint. No litigable issue will turn on what did or did not happen at the 1968 DNC, the cause and manner of Fred Hampton's death, the conclusion of the 1972 Metcalfe Report, or how many arrests the gang unit carried out in the 1980s. *See Brown v. ABM Industries, Inc.*, No. 15 C 6729, 2015 WL 7731946, at *6 (N.D. Ill. Dec. 1, 2015) (striking allegations "regarding the minutiae of similar lawsuits against [defendant] and its subsidiaries as unnecessary clutter.") (internal quotation and citation omitted). Such immaterial allegations should be stricken, as they

would result in unfair prejudice to the City if the City was obligated to undertake a factual investigation to respond to each allegation about policies that have not existed for years, about individuals who may no longer be employed by the City, or even alive.

## IV. Plaintiffs Demand Relief that is Not Connected to the Allegations of the First Amended Complaint.

The City moved to strike two specific paragraphs from Plaintiffs' Prayer for Relief: (e) and (f). The City agrees that a motion to strike a prayer for relief is premature where such relief is provided for by the law. Plaintiffs' argument that the City's motion to strike relief is premature fails, however, because Plaintiffs will never be able to demonstrate that the relief sought in paragraphs (e) and (f) of the Prayer for Relief are provided for under the law and are appropriately tailored to the claims they allege. "[I]njunctive relief should be narrowly tailored to remedy the specific harms shown by the plaintiffs . . . . An injunction should be no more burdensome to the defendant than necessary to provide complete relief to plaintiff." *Wagner v. Duffy*, 700 F. Supp. 935, 947 (N.D. Ill. 1988) (quoting *Zepeda v. United States*, 753 F.2d 719 (9th Cir. 1983)).

The relief Plaintiffs seek is not narrowly tailored to address the harms of excessive force alleged by Plaintiffs. Instead, the relief demands that the City create and implement "a system of public dissemination of all data and information pertaining to officer misconduct," and to further provide "comprehensive, community based, trauma-informed support services for individuals who are victims of excess force and other forms of police misconduct." Neither form of relief requested will impact how Chicago police officers respond to an event that might involve the use of force. Creating a comprehensive public database regarding office misconduct and offering supportive services for survivors of police violence is at best, remotely related to the claims alleged by Plaintiffs, and these forms of relief are certainly not narrowly tailored.

6

Plaintiffs do not allege any causal relationship between the City's public data dissemination practices and any harms that the Plaintiffs allege, and Plaintiffs fail to allege any harms or injury arising out of a lack of publicly available information. Plaintiffs contend that their data dissemination demand "tracks the relief implemented in many DOJ consent decrees," specifically citing Baltimore, Cleveland, Newark, Seattle, Portland, and Los Angeles, which Plaintiffs purport to attach as Exhibit D to their Response.[1] But the attached consent decree sections Plaintiffs provided do not contain anything like what Plaintiffs demand in their Prayer for Relief:

- Baltimore: The city must produce aggregate data on the nature of misconduct complaints, processing times, and outcomes, and produce publicly available summaries after the final disposition of misconduct complaints. The decree does not require public disclosure of "all data and information pertaining to officer misconduct" like Plaintiffs demand here. Response, Ex. D at 24-26.

- Cleveland: The city must *collect* detailed data on officer misconduct, use of force, and investigatory stops. The data should be used for preparation of reviews and audits by an independent monitor. The police department must issue a report "summarizing" the data and issue an annual report of "all activities" to determine whether the department's activities are being applied in a discriminatory manner. Importantly, the report does not impose any new data collection requirements. (Pls.' Resp., Ex. D at 40-43.)

- Newark: The city must "regularly report information regarding officer use of force; misconduct complaints; and stop/search/arrest data," and must post "data points" of police department audits and reports on the department website. (Pls.' Resp., Ex. D at 64.) Nothing akin to the "all information," real time reporting, or "public portal" demands of Plaintiffs here.

---

[1] Plaintiffs also assert that their data dissemination demands "reflect broader judicial trends," citing *Henry v. Centeno*, No. 10 C 6364, 2011 WL 3796749 (N.D. Ill. Aug. 23, 2011) and *Gekas v. Williamson*, 912 N.E.2d 347 (Ill. App. Ct. 2009). (Pls.' Resp. at 13.) But, *Henry* addressed whether certain documents produced in discovery should be subject to a protective order. The court explained that a party is generally free to publish information that it obtains in discovery. *Henry*, 2011 WL 3796749 at *3. *Gekas* addressed whether certain personnel files were subject to disclosure in a Illinois Freedom of Information Act request. Neither case concerned injunctive relief at all, much less an injunction requiring ongoing, post-litigation public disclosures.

7

- Seattle: The reports of the Community Police Commission must be made public. (Pls.' Resp., Ex. D at 80.) Those reports are not related to reviews of police misconduct complaints.

- Portland: A city-appointed compliance liaison must conduct semi-annual outcome assessments, which must be "informed by," *inter alia*, the number of use-of-force police interactions, the rate at which use-of-force complaints are sustained, the rate of injury, and similar "rate of" or "number of" data points. (Pls.' Resp., Ex. D at 74-77.) Again, nothing at the descriptive or public dissemination level demanded by Plaintiffs here.

- Los Angeles: The city must analyze force data "to identify significant trends, and identify and correct deficiencies revealed by this analysis;" an analysis that "will include assessment of the frequency and nature of uses of force." (Pls.' Resp., Ex. D at 56.)

In short, Plaintiffs seek relief that is not connected to their claims or alleged harms, is not supported by the law, and does not appear in any other policing-related consent decree they cite. Such relief should be stricken.

Plaintiffs' demand for comprehensive support services for individuals who suffered from police misconduct is similarly disconnected from any of the alleged harms in the FAC, and are not supported anywhere in the law or a DOJ consent decree. Plaintiffs obliquely contend that the support services demand is "a well-crafted remedy to address ongoing police abuses," (Pls.' Resp. at 14), but offer no further explanation. The case law cited by Plaintiffs is inapposite: the fact that a court ordered credit monitoring as a form of relief in an identity theft case is distinguishable from the relief sought by Plaintiffs here, as Plaintiffs do not seek to enjoin future violations of the law or prevent further harm with the relief at issue. (Pls.' Resp. at 14 (citing *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 14-md-02583-TWT, 2016 WL 6902351 at *6 (N.D. Ga. Aug. 23, 2016)). Plaintiffs' presentation of mental health provisions in other consent decrees is also distinguishable: such provisions focus on ensuring that police officers are adequately trained to respond to individuals in crisis, not to provide trauma services after

interactions with law enforcement. Much like Plaintiffs' data dissemination demands, the support services demand is different in kind from any remedy previously granted in a police misconduct case. Accordingly, the Court should strike paragraphs (e) and (f) of the Prayer for Relief.

## CONCLUSION

Plaintiffs' First Amended Complaint is replete with immaterial, redundant, and inflammatory allegations that will unfairly prejudice the City and delay the case, without any meaningful benefit to any of the parties or the Court. Furthermore, Plaintiffs demand injunctive relief which is not narrowly-tailored to this case and which is not available to Plaintiffs under the law. As such, the Court should grant the City's Motion to Strike.

Dated: January 16, 2018

Respectfully submitted,

**CITY OF CHICAGO**

By: /s/ Allan T. Slagel
One of its Attorneys

Allan T. Slagel (ARDC #6198470)
aslagel@taftlaw.com
Heather A. Jackson (ARDC #6243164)
hjackson@taftlaw.com
Barton J. O'Brien (ARDC # 6276718)
bobrien@taftlaw.com
Jeffrey M. Schieber (ARDC #6300779)
jschieber@taftlaw.com
Elizabeth E. Babbitt (ARDC #6296851)
ebabbitt@taftlaw.com
Rachel M. Schaller (ARDC #66306921)
rschaller@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011

21756610.3