IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IMMANUEL CAMPBELL, RUBIN CARTER, MARKEES SHARKEY, DEONTE BECKWITH, CHANTE LINWOOD, and RACHEL JACKSON, on behalf of themselves and a class of similarly situated persons, as well as BLACK LIVES MATTER CHICAGO, BLOCKS TOGETHER, BRIGHTON PARK NEIGHBORHOOD COUNCIL, JUSTICE FOR FAMILIES-BLACK LIVES MATTER CHICAGO, NETWORK 49, WOMEN'S ALL-POINTS BULLETIN, 411 MOVEMENT FOR PIERRE LOURY, CHICAGO URBAN LEAGUE, and NAACP, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 17 C 4467 |
| v. | ) ) | Judge John Z. Lee |
| CITY OF CHICAGO and CHICAGO POLICE OFFICERS MIGUEL VILLANUEVA, JOSUE ORTIZ, DOROTHY CADE, RICHARD BOLIN, WAUKEESHA MORRIS, BRETT POLSON, ANGEL PENA, JAEHO JUNG, JOHN CORIELL, CHAD BOYLAN, THOMAS MCGUIRE, ANTHONY OSTROWSKI, LAWRENCE GADE, JR., JOHN LAVORATA, PETER JONAS, TODD STANLEY, and JESUS ROMAN, in their individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are individuals—and organizations whose membership includes individuals—who have been and are likely to be subjected to excessive force and other constitutional violations by the Chicago Police Department. Plaintiffs have brought

suit against the City of Chicago and seventeen Chicago Police Officers[1] ("Defendant Officers"). All of Plaintiffs' class, injunctive, and *Monell* claims against the City of Chicago and Defendant Officers are currently stayed, while the constitutional and state law claims for damages asserted against Defendant Officers by the individually named Plaintiffs—Immanuel Campbell, Rubin Carter, Chante Linwood, and Rachel Jackson[2]—proceed. *See* ECF No. 156. Defendant Officers now move to dismiss the complaint in part, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons given below, the Court grants in part and denies in part the motion.

## **Factual Background**[3]

### I. Immanuel Campbell

Plaintiff Immanuel Campbell, a 22-year-old black man, lives in Chicago and is a student at the University of Illinois at Urbana-Champaign. Am. Compl. ¶ 19, ECF No. 71. On the evening of July 9, 2016, Campbell was taking part in a peaceful demonstration near the intersection of Roosevelt Road and Michigan Avenue. *Id.* ¶ 220. The goal of the demonstration was to bring attention to the topic of police misconduct in Chicago. *Id.*

---

[1] The parties have stipulated to the dismissal of Defendants Dorothy Cade, Richard Bolin, Waukeesha Morris, Brett Polson, Angel Pena, Jaeho Jung, and Peter Jonas. *See* ECF Nos. 145, 165. Ten Defendant Officers remain.

[2] The parties have stipulated to the dismissal of Plaintiffs Deonte Beckwith and Markees Sharkey's claims against all parties. *See Id.*

[3] The following facts are taken from Plaintiffs' complaint and are accepted as true on review of the motions to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

2

Campbell and other participants in the demonstration were approached by Chicago Police Department ("CPD") officers, including Defendant Officers Chad Boylan, John Coriell, Thomas McGuire, and Anthony Ostrowski. *Id.* ¶ 221. The Defendant Officers pushed Campbell, who stood unresisting with his hands at his sides, into a crowd of other officers and to the ground, then physically beat him. *Id.* ¶ 222. After the beating, the Defendant Officers handcuffed Campbell and took him to the police station, where he was kept in custody for several hours, *id.* ¶ 223, and charged with violating a city ordinance that prohibited obstruction of traffic by a non-motorist, as well as a misdemeanor offense of resisting arrest, *id.* ¶ 225. The Defendant Officers arrested Campbell to cover up their use of excessive force. *Id.* ¶ 223. Campbell later received medical treatment at Carle Hospital in Urbana, Illinois, for multiple contusions that he sustained during the incident. *Id.* ¶ 226.

Campbell's cell phone was seized at the police station and only released several weeks later, upon an order issued by the Circuit Court of Cook County. *Id.* ¶ 224. His phone was searched, without a warrant, by officers including Todd Stanley, at the behest of Officer Jesus Roman. *Id.* Campbell was also forced to defend himself in court, *id.* ¶ 225, although the charges were eventually dismissed in a manner indicative of his innocence, *id.* ¶ 227. However, Campbell was released from the University of Illinois football team as a result of the false arrest. *Id.*

The Defendant Officers involved in Campbell's beating have a history of misconduct: Boylan, Coriell, McGuire, and Ostrowski have each been accused of

3

misconduct, respectively, 2, 7, 14, and 2 times; they have each been required to justify their use of force to superiors, respectively, at least 8, 3, 5, and 4 times. *Id.* ¶ 233.

II.     **Rubin Carter**

Plaintiff Rubin Carter is a 30-year-old black man who lives in Forest Park, Illinois, and regularly visits his family in Chicago. Am. Compl. ¶ 20. On April 8, 2017, Carter was visiting his cousin in the West Town neighborhood of Chicago. *Id.* ¶ 234. At approximately 11:00 p.m., Defendant Officers Miguel Villanueva and Josue Ortiz stopped Carter at the corner of Rockwell Street and Chicago Avenue. *Id.* ¶ 235. Carter was not committing any crime, nor did he assault or threaten to assault the officers. *Id.* Defendants Villanueva and Ortiz tased Carter repeatedly in his stomach and chest, then continued to tase him as he lay on the ground in pain. *Id.* The officers then arrested Carter and charged him with two counts of aggravated assault on a peace officer. *Id.* ¶ 236. Defendants Villanueva and Ortiz further authored reports that stated, falsely, that Carter posed a physical threat to the officers. *Id.* ¶ 237. Carter, who was brought to Norwegian American Hospital after the taser incident, suffered serious pain and an exacerbation of a pre-existing heart condition as a result of the incident. *Id.* ¶ 238.

Defendant Ortiz has been accused of misconduct, including allegations of excessive force and unnecessary physical conduct, on at least 24 occasions, and he has been required to justify his use of force to superiors on at least 16 occasions. *Id.* ¶ 242.

4

## III. Chante Linwood and Rachel Jackson

Plaintiff Chante Linwood is a 28-year-old black woman who lives with her children in Chicago, Illinois. Am. Compl. ¶ 23. Linwood's friend Rachel Jackson is a 26-year-old black woman who also lives in Chicago. *Id.* ¶ 24. On April 3, 2016, Linwood and Jackson were visiting the Gold Coast neighborhood, along with other friends, planning to attend a club on Division Street. *Id.* ¶ 268. Linwood, who was pregnant with her second child at the time, worked as a popular deejay. *Id.* ¶ 268. Jackson is a lifelong Chicago resident who works as a third-grade teacher in Chicago public schools, as well as being a poet and playwright. *Id.* ¶ 282.

Linwood, Jackson, and their friends intended to check out a space at the club for possible deejay opportunities. *Id.* ¶¶ 269, 282. They had been encouraged by current DJs at the club to stop by and had been told that their names would be on the club's guest list with no entrance fee. *Id.* But when the women and their friends attempted to enter the club, a security guard denied them entrance for improper footwear and told them they "would never get into" the club, despite their names being on the guest list. *Id.* ¶ 270. Jackson—who was wearing appropriate footwear—was told that her shoes could get in, but she could not. *Id.*

As the women stood on the public sidewalk near the door of the club, the security guard told them to get off the sidewalk and summoned nearby CPD officers. *Id.* Officer Defendant (Sergeant) Lawrence Gade, Jr., and Officer Defendant John Lavorata then performed an "emergency takedown" of Linwood. They slammed Linwood into a building, pulled her hair back from her head, pushed her to the ground, placed their

5

knees on her back, and handcuffed her while wrenching her shoulders behind her back. *Id.* ¶¶ 272, 286. Linwood screamed in pain throughout this process. *Id.* ¶ 272. Jackson, meanwhile, attempted to film the incident with her phone, at which point one of the officers tried to stop Jackson from filming. *Id.* ¶ 286. When Jackson continued filming, the officers slammed her into a wall and handcuffed her. *Id.*

Linwood suffered severe shoulder pain and was unable to lift up her arms for days after the occurrence; her injuries were further compounded by the fact that she suffers from fibromyalgia. *Id.* ¶ 273. Jackson incurred bruising, abrasions, and significant pain, and for days her wrists were bruised from the overly tight handcuffs. *Id.* ¶ 288.

Both Linwood and Jackson were charged with resisting arrest and disorderly conduct, charges that were filed by the officers to conceal their own excessive force. *Id.* ¶¶ 274, 287. Neither woman was read her *Miranda* rights when she was arrested. *Id.* ¶¶ 275, 287. They were both brought into Cook County Jail. *Id.* ¶¶ 275, 289. Linwood was not permitted to call her babysitter to inform her she would not be coming home. *Id.*

Defendant Gade has been accused of misconduct, including unnecessary physical contact, illegal arrest, illegal search, and discriminatory verbal abuse on the basis of race or ethnicity, at least 45 times, and has been required to justify his use of force to superiors at least 26 times. *Id.* ¶ 280. Defendant Lavorata has been accused of misconduct at least 9 times and required to justify his use of force on 31 occasions. *Id.*

6

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

The four remaining individually named Plaintiffs bring claims under 42 U.S.C. § 1983, alleging that Defendant Officers violated their Fourth Amendment rights through use of excessive force and false arrest (Count I); conspired to deprive Plaintiffs of their constitutional rights (Count II); and failed to intervene to prevent the violation of Plaintiffs' constitutional rights (Count III). Plaintiffs further bring state law claims for civil conspiracy (Count VI) and intentional infliction of emotional distress (Count VII). Campbell and Jackson also bring state law claims for malicious prosecution

7

against the Defendant Officers involved in their arrests and detentions (Count VIII), and Campbell brings claims under § 1983 for First Amendment retaliation and unlawful search and seizure under the Fourth Amendment against the Defendant Officers involved in his arrest and detention (Counts IV and V).

Defendant Officers seek to dismiss Plaintiffs' conspiracy claims, contending that Plaintiffs have not alleged facts suggesting an agreement; failure-to-intervene claims on the basis of implausibility; and excessive force and false arrest claims as they relate to Defendants Roman and Stanley on the grounds that Plaintiffs have not alleged that those officers used excessive force. Defs.' Mot. Dismiss at 4, ECF No. 89. Defendant Officers do not move to dismiss the remaining claims asserted against them.

## I.     Conspiracy Claims (Counts II and VI)

Plaintiffs bring claims for state law civil conspiracy (Count VI) and conspiracy to deprive Plaintiffs of their constitutional rights (Count II). Plaintiffs claim that each Defendant Officer "took concrete steps to enter into an agreement to unlawfully use force on, detain, and arrest" the Plaintiffs, without probable cause, "for the purpose of violating Plaintiffs' Fourth and Fourteenth Amendment rights." *Id.* ¶ 331. According to Plaintiffs, Defendant Officers committed overt acts in furtherance of that purpose when they "us[ed] excessive force to unlawfully effect the Plaintiffs' arrests, fabricat[ed] evidence against the Plaintiffs, and approv[ed] trumped up charges against them, . . . result[ing] in their unlawful imprisonment," *id.* ¶ 332, *see also id.* ¶ 353.

Although "a bare allegation of conspiracy [is] not enough to survive a motion to dismiss for failure to state a claim," *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir.

2009)), "[i]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with," *Matthews v. Hughes*, No. 14 C 7582, 2015 WL 5876567, at *2 (N.D. Ill. Oct. 5, 2015) (citing *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir.2002)). *See also Geinosky v. City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2012) ("Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy.").

Defendant Officers first contend that the conspiracy claims must be dismissed because Plaintiffs fail to allege facts indicating that the Defendants involved in any one of the three incidents had knowledge of the other two incidents. Defs.' Mot. at 5. But the Court reads Counts II and VI not to assert that all of the Defendant Officers were involved in one overarching conspiracy to deprive all Plaintiffs of their constitutional rights, but rather that, with regard to each incident, the specific Defendant Officers involved conspired to deprive the specific Plaintiff or Plaintiffs of their constitutional rights. This is consistent with Plaintiffs' factual allegations, which allege that, in each incident, the officers involved in the incident colluded to conceal the use of excessive force against Plaintiffs by arresting Plaintiffs without probable cause. *See* Am. Compl. ¶¶ 223, 237, 274, 287. And such an approach is consistent with Federal Rule of Civil Procedure 10(b), which requires that "claim[s] founded on a separate transaction or occurrence" be stated in separate counts only "[i]f doing so would promote clarity."

The Court finds that, given the factual allegations, Counts II and VI clearly set forth separate claims of conspiracy relating to each of the three incidents. There is

9

therefore no need for Plaintiffs to plead that the officers involved in any of the three incidents had knowledge of the other two incidents, and the Court denies Defendant Officers' motion to dismiss the conspiracy claims on this basis.

Defendant Officers next contend that the conspiracy claims must fail because Plaintiffs have not alleged any facts about the "alleged agreement." Defs.' Mot. at 5. But there is no requirement, at the motion-to-dismiss stage, that a plaintiff alleging conspiracy plead any facts directly relating to an agreement. Indeed, the Seventh Circuit has explained that plaintiffs alleging conspiracy need not "plead a meeting of minds in detail," as conspiratorial agreements "may need to be inferred even after an opportunity for discovery, for conspirators rarely sign contracts." *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Here, Plaintiffs have satisfied the pleading requirements for conspiracy, which only require them to plead the parties involved, the general purpose, and the approximate date, *see Walker*, 288 F.3d at 1007. Plaintiffs have indicated the specific Defendant Officers involved in each incident, *see* Am. Compl. ¶¶ 221, 235, 272, and 286, and the dates the incidents took place, *see id.* ¶¶ 220, 234, 268, and 281. They have alleged that the purpose of the conspiracy was to "use force on, detain and arrest" Plaintiffs, *id.* ¶ 331, including arresting Plaintiffs without probable cause in order to conceal the use of excessive force against those Plaintiffs, *see id.* ¶¶ 223, 237, 274, and 287. What is more, given Plaintiffs' factual allegations, including Plaintiffs' alleged lack of wrongdoing in each incident, *see id.* ¶¶ 222, 235, 272, and 286, and the allegations that many of the involved Defendants have extensive histories of

10

misconduct accusations, *see id.* ¶¶ 233, 242, and 280, the Court finds that it is plausible, under *Twombly*, that the Defendant Officers conspired to arrest Plaintiffs and falsify documents in order to conceal the use of excessive force. *See id.* ¶¶ 223, 237, 274, and 287; *Twombly,* 550 U.S. at 556. The motion to dismiss Plaintiffs' conspiracy claims (Counts II and IV) is accordingly denied.

## II. Failure-to-Intervene Claims

In Count III, Plaintiffs allege that the Defendant Officers "stood by without intervening to prevent the violation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments, even though they had the opportunity and duty to do so." Am. Compl. ¶ 336.

To state a claim for failure to intervene under § 1983, a plaintiff must plead that the law enforcement officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "A realistic opportunity to intervene may exist whenever an officer could have called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (internal quotation marks omitted) (citing *Yang v. Hardin*, 37 F.3d 282 (7th Cir.1994)).

Defendant Officers argue that it is implausible for Plaintiffs to claim both that the Defendant Officers failed to intervene (Count III) and engaged in excessive force (Count I), and that all the failure-to-intervene claims therefore must be dismissed.

11

Defs.' Mot. at 5–6. They further contend that the failure-to-intervene claims must be dismissed against Defendants Stanley and Roman, as Campbell failed to allege any facts suggesting that either Defendant had a chance to intervene in the alleged abuse of Campbell, *id.* at 6 (citing Am. Compl. ¶¶ 220–33), and that because Carter, Linwood, and Jackson claim that all of the Defendant Officers involved in their alleged abuse personally engaged in excessive force, any failure-to-intervene claims against those Defendants (Gade, Lavorata, Ortiz, and Villanueva) cannot survive, *id.* at 6–7 (citing Am. Compl. ¶¶ 259–61, 272, 286).[4]

Defendant Officers' first argument—that all failure-to-intervene claims must fail because it is "implausible" for an officer to both use excessive force and fail to intervene—is contradicted by Seventh Circuit case law. In *Sanchez v. City of Chicago,* the Seventh Circuit held that, "in a section 1983 action alleging that police violated the plaintiff's Fourth Amendment rights by subjecting him to excessive force, a defendant police officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." 700 F.3d 919, 925–26 (7th Cir. 2012) (internal citations omitted). *See also id.* at 926 (collecting cases). It is therefore not

---

[4] Defendant Officers also argue, for the first time in their reply brief, that Plaintiffs' claims for failure to intervene are impermissibly vague, because they do not allege "who" was standing by and "when" they were standing by. Defs.' Reply at 6, ECF No. 144. Defendants have waived this argument by raising it for the first time in a reply brief. *See Narducci v. Moore,* 572 F.3d 313, 324 (7th Cir. 2009). In any event, Plaintiffs have provided general periods of time and the names of all officers involved, which is sufficient at this stage. *See Sanchez v. City of Chi.*, 700 F.3d 919, 926 (7th Cir. 2012) (noting that a failure-to-intervene claim could proceed even if a plaintiff could not identify the officers engaged in excessive force).

12

implausible to plead claims of excessive force and failure to intervene against the same officers. For the same reason, the fact that Carter, Linwood, and Jackson allege that Defendants Gade, Lavorata, Ortiz, and Villanueva used excessive force does not doom their failure-to-intervene claims against those officers.

The motion to dismiss the failure-to-intervene claims against Defendants Stanley and Roman is granted because Plaintiffs have clarified that they did not intend to pursue failure-to-intervene claims against those officers. *See* Pls.' Resp. at 11 n.2, ECF No. 125. As to all other Defendant Officers, the motion is denied.

### III. Excessive Force Claims

In Count I, Plaintiffs bring claims of excessive force and false arrest against the Defendant Officers. Am. Compl. ¶ 324. Defendant Officers move to dismiss the excessive force and false arrest claims against Defendants Stanley and Roman, arguing that Plaintiffs do not allege that these officers employed excessive force or participated in an arrest. Defs.' Mot. at 7. Because Plaintiffs have clarified that they are not alleging excessive force or false arrest claims against Defendants Stanley, and Roman, *see* Pls.' Resp. at 12 n.3, the Court grants the motion to dismiss Count I as to those Defendants.

**Conclusion**

For the reasons stated herein, the Defendant Officers' partial motion to dismiss [89] is granted in part and denied in part. The Court denies the motion to dismiss Plaintiffs' conspiracy claims (Counts II and VI); grants the motion to dismiss the failure-to-intervene claims (Count III) as to Defendants Stanley and Roman, and denies it as to all Defendant Officers; and grants the motion to dismiss the excessive force and false arrest claims (Count I) as to Defendants Stanley and Roman. The status hearing previously set for November 28, 2018 at 9:00 a.m. shall stand.

**IT IS SO ORDERED.**          ENTERED   9/12/18

_____
**John Z. Lee
United States District Judge**